UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 10-10073-NMG


UNITED STATES OF AMERICA


v.


JOHN MAHAN


**REPORT AND RECOMMENDATION RE:**
**MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE (DOCKET ENTRY # 177)**

**July 7, 2015**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to vacate, set aside or correct a sentence filed by defendant John Mahan ("defendant" or "Mahan") pursuant to 28 U.S.C. § 2255 ("section 2255").  (Docket Entry # 177).  The United States of America ("the government") opposes the motion.  (Docket Entry # 184).

PROCEDURAL BACKGROUND

The motion asserts one ground for vacating the sentence.  (Docket Entry # 177, p. 5).  Defendant alleges that his conviction is the product of ineffective assistance of counsel in violation of the Sixth Amendment.  Specifically, defendant claims he was deprived from

presenting a "good faith" or "reliance on others" defense when his attorney failed to call "counsel," "the accountant," co-defendant Michael Powers ("Powers") or defendant to testify that "defendant had been informed and believed that the independent contractor business model was appropriate." (Docket Entry # 177, p. 5). Defendant does not specifically identify the name of the counsel or accountant who should have been called. (Docket Entry # 177). Defendant also maintains that his section 2255 challenge is not time barred because when certiorari is not sought following affirmance on direct appeal, the judgment becomes "final" when the 90 day period for filing a certiorari petition expires. (Docket Entry # 177, p. 13).

The motion does not request an evidentiary hearing. Nevertheless, even if one had been requested, such a hearing is not required to resolve the motion. As discussed in greater detail infra, even accepting defendant's nonconclusory statements of facts, he is not entitled to relief. See Owens v. United States, 483 F.3d 48, 60-61 (1st Cir. 2007); David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (setting forth evidentiary hearing standard in section 2255 proceeding). A district court may make a preliminary assessment of a section 2255 motion's merits on an expanded record that may include "in an

appropriate case, even affidavits." <u>Miller v. United States</u>, 564 F.2d 103, 115 (1st Cir. 1977).   An evidentiary hearing is also not required to effectively evaluate defendant's claim because the record contains the necessary facts, including an affidavit of Micheal Doolin, Esq. ("Attorney Doolin").   (Docket Entry # 184-1).   Furthermore, the motion does not dispute any material facts which would require an evidentiary hearing.   Therefore, the motion to vacate together with the government's response are ripe for review.   (Docket Entry ## 177 & 184).

BACKGROUND[1]

I.  <u>CTS's Business Model and Failure to Pay Payroll Taxes</u>

From 1998 to 2004, Mahan and business partner Powers co-owned and operated an employment agency, Commonwealth Temporary Services Inc. ("CTS").   At the request of client companies, CTS supplied temporary employees to perform unskilled labor.   As the sole directors of the agency, Mahan was listed as the president and Powers as treasurer and clerk.   (Docket Entry # 134, Ex. 1 & 2).

---

[1]  "A section 2255 petition must be dismissed whenever 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"   <u>United States v. Williams</u>, 2012 WL 2149823, at *2 (D.Mass. March 22, 2012).   The underlying facts are taken from the trial transcripts.

Requests for CTS's services were made either directly from a client company or through third party "recruiters" who were familiar with CTS.  CTS would then provide the client company with temporary employees, create an invoice based off the temporary employees' hours and billing rate and then submit the invoice to the client company for compensation.  (Docket Entry # 144, pp. 59-69).  Powers provided both the workers and recruiters a fixed compensation at a rate which, on behalf of CTS, he solely dictated and communicated to the recruiters.  (Docket Entry # 144, p. 49).  No negotiations or invoicing for compensation took place between CTS and their recruiters although an additional payment was provided for recruiters who transported the workers to the client companies. (Docket Entry # 144, pp. 52 & 80) (Docket Entry # 139, pp. 53-55).  After the work had been completed and once Powers and Mahan determined CTS's labor costs for a payroll period, either of them would write a check for that amount and provide the recruiters with a bag of cash and instructions on how to properly apportion it to their temporary employees.  (Docket Entry # 135, pp. 5-22) (Docket Entry # 139, pp. 55-58).  The instructions lacked any suggestion of withholding money for tax purposes.  CTS also paid the recruiters and some office workers in cash.

In January of 2000, Powers and Mahan hired Joyce Christensen ("Christensen"), a certified public accountant, to prepare their corporate and personal tax returns.  After reviewing CTS's tax obligations, Christensen informed Mahan and Powers how to properly distinguish actual employees from contract workers and which tax forms should be filed for each class.  (Docket Entry # 138, p. 103).  In order to reiterate the information which she had conveyed to CTS, on March 9, 2000, Christensen sent a letter of notice to CTS stating that, "[P]roperly classified independent contractors should receive a Form 1099 at the end of each calendar year.  If you fail to provide the proper forms, you could have exposure to a large tax liability."  (Docket Entry # 138, Ex. 131).  Shortly after the letter was sent and Mahan and Powers failed to follow her advice, Christensen disengaged her services with CTS.  (Docket Entry # 138, p. 118).  To replace Christensen, CTS hired accountant Bruce Novick ("Novick").  Novick prepared tax returns for CTS until the company ceased to exist in 2004. (Docket Entry # 139, p. 202).

II.  State Audit and Power's Testimony

In July of 2000, the Massachusetts Department of Unemployment Assistance ("DUA") notified CTS that the company would be audited for its operations during 1998.

(Docket Entry # 138, p. 32).  For purposes of the DUA
investigation, CTS retained Edward DeFranceschi, Esq.
("Attorney DeFranceschi").  Throughout the investigation
and subsequent hearings, Attorney DeFranceschi maintained
the position that recruiters hired by CTS were independent
contractors.  (Docket Entry # 138, pp. 33 & 38).  After an
initial assessment of CTS's documentation, DUA investigator
Roberta Davis ("Davis") requested additional information
regarding Jose Gramajo, a recruiter routinely used by CTS,
and his wife, Delmy Gramajo, who transported workers for
CTS.  (Docket Entry # 144, p. 47).  Specifically, Davis
requested tax and business records which could support
CTS's position that, in order to fulfill client requests,
CTS would subcontract labor services offered by several
independent businesses, such as K & S Comm & Domestic
Services operated by Delmy Gramajo.  (Docket Entry # 138,
Ex. 70).  When Attorney DeFranceschi supplied Davis with a
number of invoices, he was under the impression that these
invoices had been submitted to CTS by recruiters.
Unbeknownst to Attorney DeFranceschi, however, the invoices
were actually altered CTS paysheets that Powers had
doctored and masqueraded as "good representations of the
type of invoices we rec'd then and now."  (Docket Entry #
138, Ex. 70) (Docket Entry # 139, pp. 13-17).  Contrary to

prior statements made by Powers, evidence presented during trial revealed that no recruiter had ever submitted an invoice to CTS.  (Docket Entry # 139, p. 67) (Docket Entry # 144, p. 52).

In April 2004, the results of the audit listed 12 individuals "and others similarly employed" as "in 'employment,'" thereby making "them [CTS] employee(s) and not independent contractor(s)."  (Docket Entry # 172, p. 11).  CTS appealed the decision to the DUA board of review. Powers, Mahan and Attorney DeFranceschi attended the hearings on June 9 and July 1, 2004.  During the hearings and under oath, Powers offered testimony which described the relationship between CTS and the recruiters and denied knowledge of any cash payments.  The results of the appellate hearing affirmed the DUA's initial determination which led CTS to cease all operations.  (Docket Entry # 172, p. 11).

III.  Subsequent Proceedings

Thereafter, defendant and his defunct business became the focus of a criminal investigation launched in 2006 by the Internal Revenue Service ("IRS").  (Docket Entry # 134, p. 25).  Over the course of the investigation and subsequent trial, defendant was represented by Attorney Doolin.  (Docket Entry # 184-1).  The investigation led to

7

an Indictment being issued on March 17, 2010, followed by a
Superseding Indictment, issued on March 31, 2010, which
charged Mahan, as well as Powers, with conspiracy in
violation of 18 U.S.C. § 371 and mail fraud in violation of
18 U.S.C. § 1341.  (Docket Entry ## 1 & 5).  Mahan was
additionally charged with two counts of procuring false tax
returns in violation of 26 U.S.C. § 7206 (2).  (Docket
Entry ## 1 & 5).

Before trial commenced, Attorney Doolin and Mahan
discussed several different trial strategies which were
conveyed to Powers and his attorney, Theodore Barone, Esq.
("Attorney Barone").  After weighing the possible defenses,
Attorney Doolin decided that his client's best defense
would be an attack on the government's position that the
temporary workers were actual CTS employees rather than
independent contractors.  Also, as a matter of trial
strategy, Attorney Doolin and Mahan agreed that Mahan
should not testify.  Attorney Doolin and Mahan discussed
the possibility of having Powers testify, but no definitive
conclusion on that matter was reached.  (Docket Entry #
184-1).

At the onset of trial on July 11, 2011, the opening
statements of Mahan and Powers ("defendants") shared a
common theme that individuals employed by CTS were being

improperly classified by the government.  During opening
statements, Attorney Barone indicated that the defense had
at least considered calling Attorney DeFranceschi to
testify.  (Docket Entry # 134, p. 35).  The attorneys for
both defendants concluded their opening statements by
requesting the jury to assess whether defendants had acted
in good faith when they created, owned and operated CTS.
(Docket Entry # 134, p. 27-47).

     Over the course of trial, CTS accountants Christensen
and Novick were among 19 government witnesses called to
testify, all of whom were cross-examined by Attorney
Doolin.  (Docket Entry # 138, p. 88) (Docket Entry # 139,
p. 193).  On July 18, 2015, at the end of the sixth day of
trial, the court requested defendants' attorneys to provide
general information regarding which witnesses they intended
on calling the next day.  (Docket Entry # 139, pp. 223-
224).  Attorney Barone responded that the defense's second
witness "may be Mr. DeFranceschi."  (Docket Entry # 139, p.
223).  That evening, Attorney Doolin, Mahan, Powers and
Attorney Barone conducted a telephonic interview with
Attorney DeFranceschi which left all parties in agreement
that calling Attorney DeFranceschi to testify at trial
would be a poor defensive decision.  (Docket Entry # 184-
1).  At the beginning of the seventh day of trial, just

prior to the conclusion of the government's case, Attorney Barone declared that neither Attorney DeFranceschi, nor his client, would be testifying for the defense. (Docket Entry # 140, p. 7).

Later that day, during a charge conference held after defense counsel had fully presented their case, the court noted that up until that point, both the court and the government had been operating with the expectation that Attorney DeFranceschi would be called to testify. (Docket Entry # 140, p. 170). The court then asked for confirmation that Attorney DeFranceschi's absence was intentional and that Attorneys Doolin and Barone had made a reasoned decision not to put him on the stand. (Docket Entry # 140, p. 170). Attorney Barone acknowledged that they had elected not to have Attorney DeFranceschi testify, at which point the government questioned whether providing the jury with an advice of counsel instruction would be proper. (Docket Entry # 140, p. 170). On July 20, 2011, during the eighth day trial, the court decided that an advice of counsel instruction would not be appropriate.[2]

---

[2]  As aptly reasoned by the trial court, defendants were not entitled to an advice of counsel instruction because:

> [F]irst, the defendants have presented no evidence that they fully advised Attorney DeFranceschi of their plan, received advice regarding that plan before 2000,

Later that day, the jury returned with guilty verdicts on all charges against both Mahan and Powers.  (Docket Entry # 141, pp. 4 & 133-134).  On November 3, 2011, defendant was sentenced to 76 months of imprisonment, 24 months of supervised release and ordered to pay restitution of $8,805,277.36.  (Docket Entry # 160).  On November 16, 2011, defendant filed a notice of appeal.  (Docket Entry # 161).  On December 17, 2012, the First Circuit affirmed defendant's conviction.  (Docket Entry # 173).  On March 12, 2014, defendant filed the section 2255 motion.[3]  (Docket Entry # 177).

## DISCUSSION

### I.   Section 2255 Review

---

and followed that exact advice in good faith; and second, even if there were some basis for an advice of counsel instruction, that instruction is subsumed by the general good-faith instruction that the Court will give.

(Docket Entry # 141, p. 4).

[3]  While defendant filed the motion on March 12 2014, and the First Circuit affirmed defendant's conviction on December 14, 2012, the motion is not time barred because the one year statutory period began when the 90 day period for filing a certiorari petition expired on March 14, 2013.  See 28 U.S.C.A. § 2255(f)(1); United States v. Olvera, 2015 WL 110149, at *1 (5th Cir. Jan. 7, 2015); see also United States v. Redd, 562 F.3d 309, 311 (5th Cir. 2009) (quoting Clay v. United States, 537 U.S. 522, 527 (2003)).  The district judge referred the motion to this court in November 2014.  (Docket Entry # 186).

Section 2255 "provides for post-conviction relief in four instances, namely, if the defendant's sentence (1) was imposed in violation of the Constitution or laws of the United States, or (2) the court was without jurisdiction to impose such sentence, or (3) was in excess of the maximum authorized by law, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  The fourth category includes only "assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  David v. United States, 134 F.3d at 474. Simply put, "apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident."  Id.  Defendant bears the burden of establishing the need for section 2255 relief.  Id.  To obtain relief under section 2255, defendant "must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).

II.  Ineffective Assistance of Counsel Claim

Defendant's motion to vacate alleges that his trial counsel failed to present the jury with a substantial defense consisting of either a good faith or an advice of counsel defense.  Defendant states that throughout pretrial proceedings, he had been led to believe that these defenses would be presented.  Specifically, but without naming individuals, defendant alleges that he was led to believe "that the independent contractor business model was appropriate and legal by counsel, the accountant, and the co-defendant" and that at least one of them, or even defendant himself, should have been called to testify in order to substantiate his defense.  (Docket Entry # 177, p. 5).

Claims of ineffective assistance of counsel are governed by the well established, two prong test fashioned by the Supreme Court in Strickland v. Washington, 466 U.S. 688 (1984).  In order to succeed under Strickland, a defendant must demonstrate that in light of all the circumstances as they appeared at the time of the conduct, counsel's representations fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88, 694.  "Failure to make the required showing

13

of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700, 704; see also United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (defendant must demonstrate that his attorney's performance was constitutionally deficient and prejudicial); accord Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000). An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable." United States v. McGill, 11 F.3d 223, 266 (1st Cir. 1993).

Moreover, "There is a strong presumption that counsel has rendered adequate assistance and made all significant decisions for tactical reasons rather than through neglect." Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690). Consequently, the burden that defendant faces when filing a section 2255 motion is unquestionably heavy, as was demonstrated by the Eleventh Circuit in Chandler when the court held that the petitioner must "establish that no competent counsel would have taken the action that his counsel did take." Chandler v. U.S., 218 F.3d 1305, 1313-14 (11th Cir. 2000); see also Strickland, 466 U.S. at 689 (holding that "judicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance").

When filing a section 2255 motion, a significant obstacle is posed by the deficient performance prong if trial strategy is questioned.  It is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, at 689.  Thus, an evaluation of attorney performance requires that "every effort be made to eliminate the distorting effects of hindsight." Id.  The presumption of reasonableness when reviewing a counsel's conduct requires a court to defer to an attorney's tactical decisions, including the level of emphasis placed on different legal arguments. Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) ("A criminal defense attorney routinely faces thorny tactical decisions that may heavily bear on the defendant's life or liberty"). The First Circuit has emphasized that, "[T]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under circumstances then obtaining." United States v. Natanel, 938 F.2d 302,

309-10 (1st Cir. 1991); accord Lema v. United States, 987

F.2d 48, 51 (1st Cir. 1993); see also United States v.

McGill, 11 F.3d at 227 ("to avoid the shoals of ineffective

assistance, an attorney's judgment need not necessarily be

right, so long as it is reasonable").  There is "a strong

presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered

sound trial strategy.'"  Strickland, 466 U.S. at 689.

In the motion to vacate, defendant's complaint fails

to satisfy the two prong test set forth by Strickland.

Defendant's motion broadly asserts a sole ground as a basis

for vacating the sentence:

> Defendant had a substantial ground of
> defense that he was led to believe would be
> raised during the trial.  He was informed and
> believed that the independent contractor model
> was appropriate and legal by counsel, the
> accountant, and the co-defendant.  He was led to
> believe that at least one of these witnesses
> would be called to so testify, but none were.
> Someone, even the defendant, should have put this
> defense before the jury.

(Docket Entry # 177, p. 5).  Defendant's motion does

not specifically identify which accountant or counsel

should have testified in order to support the defense.

It also fails to address any actual instances of

conduct which would rise to the level of incompetence as required by Strickland.  Defendant's complaint, taken in its entirety, amounts to little more than criticisms of trial strategy and fails to establish that Attorney Doolin's performance "fell below an objective standard of reasonableness."  Strickland, at 694.  It can hardly be said that defendant's trial counsel, by choosing to pursue a defense which attacked the government's case, rather than focusing on good faith or advice of counsel, acted ineffectively under the aforementioned standard. Defendant's contention that Attorney Doolin was deficient by not calling additional witnesses in order to bolster a good faith or advice of counsel defense can be sufficiently resolved through a simple examination of the plausible reasons which would account for each named party's absence.  If Attorney Doolin and Attorney Barone investigated witnesses and purposely decided not to offer their testimony at trial, the decision is probably a matter of trial strategy and generally not subject to review.  See United States v. Best, 426 F.3d 937, 944 (7th Cir. 2005).

Trial counsel not calling counsel (presumably Attorney DeFranceschi) to support Mahan's advice of counsel defense was a sound strategic decision and far from deficient.  Defendant's argument that Attorney Doolin should have called Attorney DeFranceschi to corroborate Mahan's advice of counsel defense is meritless because Attorney Doolin initially sought to have Attorney DeFranceschi testify as an expert, which the court denied shortly before trial, thereby narrowing the scope of Attorney DeFranceschi's testimony to that of a fact witness.  (Docket Entry # 60, Ex. 1) (Docket Entry # 68).  During opening statements, Attorney Barone indicated that the defense was still at least considering having Attorney DeFranceschi testify.  (Docket # 134, p. 35).  It was not until the outset of the seventh day of trial, just prior to the conclusion of the government's case that Attorney Barone finally declared that neither Attorney DeFranceschi, nor Powers, would be testifying.[4] (Docket Entry # 140, p. 7).  Thus, after being afforded the opportunity to evaluate the government's

---

[4]  The choice not to call these witnesses was reiterated at the end of the day during the charge conference when Attorneys Doolin and Barone both acknowledged that they had chosen not to put Attorney DeFranceschi on the stand. (Docket Entry # 140, p. 170).

case, which proved that defendants had misrepresented documents and communications to Attorney DeFranceschi, Attorney Doolin and Attorney Barone weighed the benefits and pitfalls of Attorney DeFranceschi's layman testimony and mutually decided that offering this testimony would not serve their clients' best interests.  (Docket Entry # 184-1) (Docket Entry # 140, p. 170).  This proved to a wise decision because even if Attorney DeFranceschi had testified at trial, defendant would still not be eligible for an advice of counsel defense.[5]  It cannot be said that Attorney DeFranceschi's absence at trial was the product of incompetence, rather, it was a calculated decision employed by Attorney Doolin to protect Mahan from being implicated any further.

Defendant's belief that his trial counsel was deficient by not calling an accountant to corroborate his good faith or advice of counsel defense is unfounded and contradicted by the trial record.  (Docket Entry # 139, pp.

---

[5]  Regardless of what Attorney DeFranceschi would have testified to at trial, defendant would still not be able to show that he had fully advised Attorney DeFranceschi of his plan or that he received advice regarding that plan before 2000.  The record shows that CTS decided to retain Attorney DeFranceschi on July 24, 2000, based on Joyce Christensen's recommendation.  (Docket Entry # 68-1) (Docket Entry # 138, p. 136).

220-221).  Over the course of trial, Attorney Doolin cross-examined all of the 19 witnesses produced by the government, including both of the accountants who had been hired by CTS, as well as several other witnesses with accounting backgrounds.  Given the quantity of comprehensive accounting evidence provided during trial, especially the testimony of Novick, who testified that "Mahan had little expertise in accounting or tax matters" and that the terms "independent contractor" and "subcontractor" are essentially synonymous, it remains unclear as to what additional information, or how defendant's good faith defense would have been bolstered by calling an additional accountant.  (Docket Entry # 139, pp. 220-221).

Attorney Doolin was also in no way deficient by not calling defendant as a witness and, moreover, this choice was ultimately one made by defendant himself.  (Docket Entry # 184-1).  Attorney Doolin's affidavit contained in the record states that, "Throughout my representation of Mr. Mahan, Mr. Mahan and I discussed his right to testify in his own defense.  Ultimately, after consultation with me, Mr. Mahan chose not to testify.  I agreed with this decision."  (Docket Entry # 184-1).  Defendant's motion simply states that he should have been called to testify

and is silent as to what exculpatory information defendant would have furnished, how defendant's choice amounts to counsel's deficiency or how defendant was prejudiced through this. (Docket Entry # 177).  The record supports that Attorney Doolin advised Mahan of his constitutional right not to testify, and the choice to shield Mahan from the inherent risk of cross examination was a reasonable strategic decision executed to serve Mahan's best interests.  (Docket Entry # 184-1).

Attorney Doolin's effort to minimize defendant's exposure to cross examination is further evidenced by opting to play the recording of Powers' testimony during the DUA hearing, rather than having Powers take the stand. (Docket Entry # 140, p. 148).  Attorney Doolin successfully advocated to play the recording of Powers' testimony during the DUA hearing, in its entirety, rather than the brief selections which the government sought to admit.  (Docket Entry # 140, p. 6).  This advocacy allowed the jury to hear the good faith defense employed by Powers throughout the DUA hearing without exposing him to cross examination. Nevertheless, even if the recording had not been presented at trial, defendant's complaint that Powers was not called to testify would fall well below the threshold of deficiency required to satisfy the first prong of

Strickland.  Because Powers was Mahan's co-defendant at
trial, Powers' choice to testify stems from a right vested
solely to Powers and the outcome of his decision cannot be
said to reflect some deficiency by Attorney Doolin.
Attorney Doolin's decision to not call any of the foregoing
witnesses was not "so patently unreasonable that no
competent attorney would have made it."  Knight v. Spencer,
447 F.3d 6, 15 (1st Cir. 2006).

    Under the second prong of the Strickland test, the
defendant must establish prejudice by showing a "reasonable
probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different."
Strickland, 466 U.S. at 694.  A "reasonable probability is
a probability sufficient to undermine confidence in the
outcome."  Id.  The defendant must affirmatively prove
prejudice because attorney errors are as likely to be
"utterly harmless" as they are to be prejudicial.  Gilreath
v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (quoting
Strickland, 466 U.S. at 693).

    Regardless of which strategy the defense decided to
use, due to the vast amount of incriminating evidence
presented by the government during trial, defendant has not
been able to show that had counsel employed a different
strategy, "the result of the proceeding would have been

different." <u>Williams v. Taylor</u>, 120 U.S. 362, 390 (2000).

Defendant's contention that a good faith defense was not

presented to the jury is incorrect and contradicted by the

trial record. (Docket Entry # 139, pp. 220-221). The

trial record evinces Attorney Doolin's efforts to bring a

good faith defense to the jury. (Docket Entry # 138, pp.

135-136) (Docket Entry # 139, pp. 220-221). Although he

afforded a smaller emphasis to this line of defense, it was

still provided for the jury to consider and it cannot be

said to have prejudiced defendant. Attorney Doolin

provided Mahan with an advice of counsel defense to the

limited extent it existed. During trial, the government

was able to prove that Mahan's accountant had informed him

of his tax obligations as well as his potential liability

if he failed to oblige. (Docket Entry # 138, p. 131). It

was also proven beyond a reasonable doubt that defendants

retained Attorney DeFranceschi subsequent to many CTS

violations and, on multiple occasions, made material

misrepresentations to him regarding the operations and

transactions of CTS. (Docket Entry # 138, Ex. 66-73, p.

4). Because Christensen had explicitly advised defendants

of their possible tax liability and how to properly proceed

and Attorney DeFranceschi was advocating a position which

defendants knew to be untrue, it cannot be said that Mahan

23

was ever entitled to an advice of counsel defense or that
such a defense would have provided Mahan any relief.

   In sum, defendant fails to meet his burden to show
both deficient performance and prejudice in regards to the
alleged deficiency of his trial counsel.  Section 2255
relief is therefore not available on the basis of a
violation of the Sixth Amendment.

CONCLUSION

   Based on the foregoing reasons, this court **RECOMMENDS**[6]
that the section 2255 motion (Docket Entry # 177) be
**DENIED**.




                            /s/ Marianne B. Bowler
                            **MARIANNE B. BOWLER**
                            United States Magistrate Judge

---

[6]   Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of
the Report and Recommendation to which objection is made
and the basis for such objection.  See Fed. R. Civ. P.
72(b).  Any party may respond to another party's objections
within 14 days after service of the objections. Failure to
file objections within the specified time waives the right
to appeal the order.